53 CCPA

**Application of Andre FOURNET, Rene Victor, Julien Achard and Pierre Lafont.**

**Patent Appeal No. 7587.**

United States Court of Customs and Patent Appeals.

March 17, 1966.

---

Donald G. Welsh, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (Jack Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRK-PATRICK.*

SMITH, Judge.

The issue here is whether the invention defined in the seven appealed claims,[1] a chemical process, is obvious within the meaning of 35 U.S.C. § 103.

The appealed claims define a process for the production of cyclododecanone and cyclododecanol. The broadest claim on appeal, claim 1,. defines a process "which comprises oxidizing cyclododecane in the liquid phase with molecular oxygen at a temperature of 90°–150° C."

The appealed claims were considered together before the board and in the briefs before us; hence we will treat them likewise.

The prior art references relied on as a basis for the rejection are as follows:

Moell et al. 2,927,135 Mar. 1, 1960 [Moell]
Badische Anilin 1,070,846 Feb. 24, 1954 et al. (France)
Dougherty et al. 2,615,921 Oct. 28, 1952 [Dougherty]

The parties do not disagree as to the teachings of the above references. Dougherty discloses the oxidation of $C_4$ to $C_{20}$ hydrocarbons with oxygen under pressure and at a temperature in the range of 230° to 450°F. The specification in Dougherty provides:

The hydrocarbons that are oxidized in accordance with our process are those hydrocarbons that are liquid at the reaction conditions. These hydrocarbons preferably contain from 4 to 20 carbon atoms per molecule, and they include aromatics, aliphatics, cycloaliphatics, aralkyls and alkaryls. Typical examples of these hydrocarbons are butane, pentane, hexane, heptane, octane, cyclobutane, cyclopentane, cyclohexane, methylcyclohexane, cycloheptane, benzene, toluene, xylene, ethylbenzene, tertiarybutylisopropyl benzene, diisopropylbenzene, cyclohexylbenzene, propylbenzene and butylbenzene. * * *

Moell and French disclose the oxidation of cyclooctane with oxygen.

It is readily apparent that the process defined by the appealed claims is analogous to each of the processes disclosed by the references. Appellants do not argue otherwise. Rather, appellants argue that considering the claimed process as a whole, including the starting material, it would be unobvious to substitute cyclododecane for cyclooctane

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. In application Ser. No. 44,836, filed July 25, 1960. No claims have been allowed.

or cycloheptane.[2] In support of this argument, appellants have submitted certain references:

Ziegler et al., Annalen der Chemie, Vol. 513, pp. 43–64 (1934) [Ziegler]

Prelog, Jour. Chem. Soc. (London 1950) pp. 420–428

According to appellants, Ziegler

* * * describes a series of comparative experiments with the members of a homologous series of ring compounds containing from 5 to 20 carbon atoms showing that as a group there is a rather sharp divergence in properties as between the $C_9$–$C_{12}$ members and the others, both higher and lower.

As to the Prelog publication, appellants state:

* * * This paper likewise describes a series of comparative tests with ring compounds containing from 5 to 20 carbon atoms. These data, while different in certain respects from those obtained in the earlier work of Ziegler et al, nevertheless carry forward and confirm the finding that a sharp and unpredictable discontinuity in the chemical and physical properties of the $C_9$–$C_{12}$ ring compounds exists.

The references of record may be summarized as follows: Dougherty, Moell and French teach the general process steps claimed by appellants. Moell and French teach specifically the utilization of cyclooctane, $C_8H_{16}$, as a starting material. Dougherty discloses the oxidation of $C_4$–$C_{20}$ hydrocarbons and teaches specifically cycloheptane, $C_7H_{14}$, as a starting material. Ziegler and the Prelog publication teach generally, without relation to the process claimed here, that a sharp and unpredictable discontinuity in the chemical and physical properties of the $C_9$–$C_{12}$ ring compounds exists.

The question here is whether, considering the differences between the subject matter as a whole and the prior art, the subject matter would be obvious to one of ordinary skill in the art under the conditions stated in 35 U.S.C. § 103. The subject matter as a whole includes the claimed process in relation to the starting material.

In view of both the general and specific teachings of the prior art relied on by the Patent Office, we think appellants' claimed process would be obvious to one of ordinary skill in the art. The more *general* teachings of the references cited by appellants fall short of dispelling the prima facie case of obviousness of the claimed process in view of both the general and specific teachings cited by the Patent Office.

Appellants have not come forward with any showing which would suggest that the claimed process would not have been obvious to one of ordinary skill in this art. In the final analysis, the person of ordinary skill in the art is required to evaluate and weigh the teachings of all the references as a whole. The general teachings of references relied on by appellants are not such that one of ordinary skill in the art would consider the claimed process to be unobvious.

Appellants argue that our decision in In re Mills, 281 F.2d 218, 47 CCPA 1185, is persuasive authority for holding the invention in this appeal is unobvious. The solicitor in reply argues that Mills may be distinguished on the ground that in Mills a *composition* was claimed while here the claim is to a *process*.

In Mills we rejected any doctrine of "legal presumption of obviousness." In analyzing the deficiences of the prior art teachings relied on as establishing the composition claimed as obvious we stated:

On the record before us, to reach the conclusion reached by the board, we are required in some way to bridge

---

**2.** Appellants appear to argue that the invention defined by the appealed claims is a new and useful process within the meaning of 35 U.S.C. § 101 and not a new use of a known process. See 35 U.S.C. § 100. We will consider the issue raised under 35 U.S.C. § 103 on that basis.

the factual gap between the Lewis disclosure of the $C_8$ to $C_{12}$ alkyl sulfates and applicant's claim for use of the $C_1$ alkyl sulfate with respect to a specific property, i. e., the inhibiting of caking in a detergent composition containing an alkyl aryl sulfonate detergent. The board and the examiner have substituted what the board terms a "legal presumption" for factual data, which is missing from the record, and without which a proper decision as to obviousness cannot be made.

We think the factual gap found in the prior art teachings in Mills has been filled here. The references in support of the rejection teach analogous processes employing specific reactants having 7 or 8 carbon atoms in the ring and also disclose generally that reactants possessing 4 to 20 carbon atoms in the ring may be employed. The principles in Mills are applicable here and the art of record conforms to those principles.

 Here, as in In re Lunsford (PA 7512), 357 F.2d 385, 53 CCPA ——, decided concurrently herewith, we regard the use of prior art teachings under 35 U.S.C. § 103 as a two-way street, available to both parties. We are required to evaluate the references *as a whole* regardless of the party offering the references. In *Lunsford,* we refused to ignore specific teachings which we believed would be given greater weight than general teachings by one of ordinary skill in the art. We evaluated the references against the invention as a whole as required by 35 U.S.C. § 103 and gave effect to the uncontroverted specific teachings which were contrary to the position of the Patent Office. Here, we think that the specific teachings offered by the Patent Office show the obviousness of the claimed process to the satisfaction of one of ordinary skill in the art.

The decision of the board is therefore affirmed.

Affirmed.